UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORENZO TOBIAS RAMSEY,
               Plaintiff,                    CIVIL ACTION NO. 12-13328

        v.                            DISTRICT JUDGE DAVID M. LAWSON

                                MAGISTRATE JUDGE MARK A. RANDON
COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 9, 12)

Plaintiff Lorenzo Tobias Ramsey challenges the Commissioner of Social Security's ("the Commissioner") final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 9, 12). Judge David M. Lawson referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

**I.      RECOMMENDATION**

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.     DISCUSSION**

     ***A.     Framework for Disability Determinations***

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as

the inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment, which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months. 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

   The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity,
> benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of
> impairments that "significantly limits . . . physical or mental ability to do basic
> work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a
> severe impairment that is expected to last for at least twelve months, and the
> severe impairment meets or equals one of the impairments listed in the
> regulations, the claimant is conclusively presumed to be disabled regardless of
> age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits
> are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work,
> if other work exists in the national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534

(6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers

to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## B.   *Standard of Review*

   This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited such that the Court

"must affirm the Commissioner's conclusions absent a determination that the Commissioner has

failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of

evidence submitted by a party") (internal quotation marks omitted).  Further, this Court does

"not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass*,

499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing

court, to evaluate the credibility of witnesses, including that of the claimant").

## III.    REPORT

### A.    *Administrative Proceedings*

Plaintiff applied for supplemental security disability income on November 21, 2008,

alleging he became disabled on October 12, 2003 (Tr. 28).  After the Commissioner initially

denied Plaintiff's application, he appeared with counsel for a hearing before ALJ Andrew G.

Sloss, who considered the case *de novo*.  In a written decision, the ALJ found Plaintiff was not

disabled (Tr. 28-33).  Plaintiff requested an Appeals Council review (Tr. 21).  On July 9, 2012,

the ALJ's findings became the Commissioner's final administrative decision when the Appeals

Council declined further review (Tr. 1-3).

### B.    *ALJ Findings*

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one

that he had not engaged in substantial gainful activity since his application date in November of

2008 (Tr. 30).

At step two, the ALJ found that Plaintiff had the following medically determinable

impairments: coronary artery disease, hypertension, hepatitis C and substance abuse (Tr. 30).

But, the ALJ concluded that Plaintiff was not disabled because he did not have "an impairment

or combination of impairments that has significantly limited (or is expected to significantly

limit) the ability to perform basic work-related activities for 12 consecutive months" (Tr. 31).

### C.    *Administrative Record*

#### 1.    **Plaintiff's Hearing Testimony and Statements**

-4-

Plaintiff testified that he stopped working in October of 2003 because he had a heart attack (Tr. 41-42).[1]  In addition, Plaintiff has shortness of breath, arthritis in both knees, and pain in his left arm and shoulder.  Plaintiff testified that he has trouble pushing, pulling, and reaching overhead with his left arm; he cannot stand or walk more than 10 minutes, climb stairs, or lift more than 10 pounds (Tr. 42, 44-45).  Plaintiff's medication helps "very little" and makes him drowsy; he has to take naps throughout the day (Tr. 42, 45-46).  According to Plaintiff, he has to elevate his feet to waist level "[b]etween meals and from the time [he] wake[s] [up] until the time [he] go[es] to bed" (Tr. 43, 46).  Plaintiff does "very little" housework (Tr. 43).

### 2.   Relevant Medical Evidence

Plaintiff was diagnosed with hepatitis C in 1990 (Tr. 258), and he has had arthritis in both knees since 1989 (Tr. 204).  In addition, Plaintiff has had hypertension, smoked marijuana and used alcohol and cocaine since at least 2003 (Tr. 200, 204-205, 209, 223, 230, 238, 240, 244, 249-250, 252, 254, 260).  He was diagnosed with vertigo in 2004 (Tr. 222).

Tammy Nguyen performed a case analysis for the Social Security Administration on February 2, 2009.  Despite Plaintiff's medical conditions, Ms. Nguyen found that Plaintiff did not have a "severe" impairment (Tr. 248).

### a.   Shortness of Breath

On November 11, 2003, Elmahdi Saeed, M.D., found "[Plaintiff] did not appear to have trouble breathing."  He did not have any shortness of breath, wheezing, cough or sputum;[2] his

---

[1]The medical evidence does not support Plaintiff's testimony that he suffered a heart attack.

[2]Sputum is "matter ejected from the respiratory tract through the mouth."  *See Dorlands Illustrated Medical Dictionary*, 1783 (31st Ed. 2007).

chest movements were equal bilaterally; he had good air movement; and, there were no crackles or rhonchi.[3]  But, Plaintiff's chest X-ray revealed fibrosis[4] and/or atelectasis[5] at the right lung base.  Dr. Saeed diagnosed Plaintiff with cocaine-induced chest pain (Tr. 206-209).

On November 14, 2003, Plaintiff's lungs were clear (Tr. 201).

On August 12, 2008, Samiullah H. Sayyid, M.D. found that Plaintiff's shortness of breath was possibly due to chronic smoking and developing emphysema (Tr. 240).

On October 5, 2010, Plaintiff denied shortness of breath (Tr. 249).

### b.    Heart Problems

On November 11, 2003, Plaintiff had chest pain, but no heartburn; and, his heart had regular rate and rhythm without extra sounds, murmurs, or palpitations[6] (Tr. 206-208).  An EKG

---

[3]Rhonchi is a "continuous snorelike sound in the throat or bronchial tubes, due to a partial obstruction."  *See* http://medical-dictionary.thefreedictionary.com/rhonchi (last visited July 2, 2013).

[4]"Pulmonary fibrosis occurs when lung tissue becomes damaged and scarred.  This thickened, stiff tissue makes it more difficult for [the] lungs to work properly.  As pulmonary fibrosis worsens, [an individual] become[s] progressively more short of breath."  *See* http://www.mayoclinic.com/health/pulmonary-fibrosis/DS00927 (last visited July 2, 2013).

[5]Atelectasis is "a complete or partial collapse of a lung or lobe of a lung."  *See* http://www.mayoclinic.com/health/atelectasis/DS01170 (last visited July 2, 2013).

[6]Palpitation is "a subjective sensation of an unduly rapid or irregular heart beat."  *See* *Dorlands Illustrated Medical Dictionary*, 1386 (31st Ed. 2007).

on November 12, 2003 revealed normal rhythm, but concentric left ventricular hypertrophy[7] (Tr. 220).

On November 14, 2003, Plaintiff's heart had regular rate and rhythm, and his chest X-ray was normal. A stress test revealed a small defect in the posterior and inferior wall of Plaintiff's heart (Tr. 201).

On February 25, 2004, Omar Bakr, M.D., F.A.C.C., found Plaintiff had atypical chest pain (Tr. 244). Two days later, Imad Issawi, M.D., F.A.C.C., found Plaintiff had normal left ventricular systolic function (Tr. 245).

### c.      Plaintiff's Ability to Walk

On November 11, 2003, Plaintiff had lower back pain, but he did not have trouble balancing, and his gait was normal (Tr. 206, 208).

On February 25, 2004, Plaintiff could not exercise because of his arthritis and knee pain (Tr. 244).

On September 10, 2005, Plaintiff fractured his left foot. He was instructed to elevate, and avoid weight bearing, on his foot (Tr. 224).

On September 22, 2005, Plaintiff reported pain, increased swelling, and tenderness in his left foot. Although radiographs showed no acute fracture or dislocation, Plaintiff was instructed

---

[7]"Left ventricular hypertrophy is enlargement (hypertrophy) of the muscle tissue that makes up the wall of [the] heart's main pumping chamber (left ventricle). Left ventricular hypertrophy develops in response to some factor, such as high blood pressure, that requires the left ventricle to work harder. As the workload increases, the walls of the chamber grow thicker, lose elasticity and eventually may fail to pump with as much force as that of a healthy heart. Left ventricular hypertrophy is more common in people who have uncontrolled high blood pressure or other heart problems. Treating high blood pressure can help ease [the] symptoms and may reverse the left ventricular hypertrophy." *See* http://www.mayoclinic.com/health/left-ventricular-hypertrophy/DS00680 (last visited July 2, 2013).

to elevate his left leg for pain and swelling control, remain non-weight bearing, and wear a fracture boot for four weeks (Tr. 225-226).

On November 11, 2005, Plaintiff continued to have pain and swelling in his left toe and decreased range of motion in the first and second toe. Plaintiff was instructed to continue wearing his fracture boot (Tr. 231).

In December of 2010, Plaintiff's gait, range of motion and stability were within normal limits (Tr. 258).

### d.    Left Shoulder Pain

On November 3, 2005, Plaintiff was stabbed in his left upper shoulder (Tr. 229). Five years later, Plaintiff continued to report pain and swelling in his left arm and shoulder that increased when he coughed or laughed (Tr. 249).

### 3.    Vocational Expert

The ALJ asked the VE to assume an individual of Plaintiff's age, education and work history who could not engage in sustained work activity on a regular and continuing basis for eight hours a day, five days a week, for a 40-hour work. Based on Plaintiff's medical conditions, the VE testified that such an individual would be precluded from work (Tr. 48).

### D.    Plaintiff's Claim of Error

Plaintiff argues that the ALJ erred at step two when he found Plaintiff's medical conditions did not constitute a "severe" impairment, because he had "the ability to perform basic work-related activities" (e.g., walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling) (Tr. 31). According to Plaintiff, he cannot perform basic work-related activities, because he has to sit down with his feet elevated throughout the day.

Severity is evaluated using a *de minimus* standard.  *Boger v. Comm'r of Soc. Sec.*, No. 11-15526, 2013 WL 1279162 at *4 (E.D. Mich. March 27, 2013) (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  "The threshold is low and 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.'" *Id.* (quoting *Maloney v. Apfel*, 211 F.3d 1269 (6th Cir. 2000)).  "Nevertheless, a claim may be dismissed at step two if it is determined that the claim is 'totally groundless' solely from a medical standpoint."  *Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 929 (6th Cir. 2007) (citations omitted).  Plaintiff has the burden to prove that the administrative record contains objective medical evidence suggesting that he is disabled.  *See id.*

Plaintiff undoubtedly suffered from a host of medical impairments – coronary artery disease, hypertension, hepatitis C and substance abuse – but "[t]he mere existence of those impairments . . . does not establish that [Plaintiff] was significantly limited from performing basic work activities for a continuous period of time."  *Id.* at 930.

Although Plaintiff testified that he has functional limitations due to his medical impairments, the objective medical evidence simply does not support his subjective characterization of his symptoms.  The administrative record contains *no* medical evidence indicating that Plaintiff's impairments limited his ability to perform basic work activities.[8]  To the extent Plaintiff was required to elevate his feet, the medical evidence does not support Plaintiff's testimony that he had to do so constantly throughout the day.  And, the only medical recommendation to elevate his *foot* was due to a fracture that would not significantly limit Plaintiff's ability to perform basic work-related activities for 12 consecutive months.  As such, Plaintiff did not satisfy his burden, and the ALJ's decision is supported by substantial evidence.

---

[8]Plaintiff was only briefly limited in his ability to walk when he fractured his left foot.

*See Long v. Apfel*, 1 Fed. Appx. 326, 331 (6th Cir. 2001) ("[w]hen doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment") (citations omitted).[9]

## IV.    CONCLUSION

Because substantial evidence supports the ALJ's decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D.

---

[9]Plaintiff also attempts to argue that this case should be remanded to address his mental limitations: "consideration was not given to [his] mental limitations at the hearing . . . however, they were discussed, briefly, and were afforded significant weight, in the ALJ's decision to deny benefits" (Dkt. No. 9 at p.12).  This Magistrate Judge finds Plaintiff's "argument" is unclear, undeveloped, and waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones").

Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: July 2, 2013

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, July 2, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*
*Case Manager for Magistrate Judge Mark A. Randon*
